THE PEOPLE OF PUERTO RICO, Plaintiff and Appellant, *v.* LUIS GERENA LÓPEZ, Defendant and Appellee.

No. 14722.   Argued December 1, 1950.—Decided February 27, 1951.

212

Víctor Gutiérrez Franqui, Attorney General, (Vicente Géigel Polanco, Former Attorney General, on the brief) and .J. Rivera Barreras, Fiscal of the Supreme Court, for appellant. Baltasar Quiñones Elías, Angel Cruz Cruz, and Santos P. Amadeo, for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

Luis Gerena López was charged in the District Court of Aguadilla with an attempt to commit rape on the person of María Brunilda Soto, alleged to have been committed on June 25, 1949. After a trial the jury found him guilty of the offense on December 12, 1949 and the court sentenced him on December 23, 1949 to serve from one to two and one half year's imprisonment in the penitentiary. Defendant did not appeal and was subsequently incarcerated.

On January 12, 1950 he filed in the same criminal case, a petition for a "Writ of *Coram Nobis*" in which after alleging the facts above set forth he stated the following:

"*Fourth:* That during the prosecution of the petitioner the only testimony that connected him with the offense charged was that of María B. Soto, the alleged prosecutrix.

"*Fifth:* That about December 27, 1949 the witness María B. Soto was investigated by the federal authorities because they suspected that she was violating the postal laws of the United

States by sending anonymous letters by mail allegedly written by the petitioner and that in said investigation María B. Soto confessed to the federal authorities that her testimony incriminating the petitioner was absolutely false and that she had made those statements in order to take vengeance upon the petitioner.

"*Sixth:* That since the testimony of María B. Soto against petitioner herein in the prosecution brought in this Court against the petitioner was fraudulent and false, such falsity, perjury and fraud annulled the whole proceeding as well as the judgment rendered by this Court against the petitioner.

"*Seventh:* That had it been known during the prosecution that the testimony of María B. Soto was fraudulent, this Court as well as the jury which heard the case would not have convicted the petitioner because such false testimony of María B. Soto constitutes a fraud on judicial administration, rendering the trial and the sentence void because petitioner was deprived of his right to an impartial trial as required by § 2 of the Organic Act of Puerto Rico and the decision of the Federal Supreme Court and the State courts."

Consequently he requested that an opportunity be given him to prove these allegations and if they were true to declare the prosecution and the judgment rendered against him null and void and that his discharge be ordered immediately.

In opposition to this motion the district attorney interposed a demurrer alleging that the so-called relief "Writ of *Coram Nobis*" was not recognized by the laws of Puerto Rico and even if it were, the motion should be denied because no affidavits had been offered to support it. At the same time the district attorney filed an answer accepting the facts alleged in the petition with reference to the information, verdict of the jury and judgment rendered by the court in the case of attempt to commit rape and denying all the other facts alleged.

A hearing was held and after the legal question raised by the district attorney was argued, the court decided it in the following manner:

"Upon deciding this question, the court believes that although the motion of the defendant is labelled "Writ of *Coram Nobis*," as stated by Mr. Amadeo, what petitioner seeks is substantial justice. In law the label used is immaterial and if certain facts are alleged and relief is sought to correct a particular situation, the courts should hear the evidence in support thereof, weigh it and then decide with a view to impart full justice. The Court is of the opinion that this is a motion to set aside a judgment which it is alleged under oath was obtained by fraud. The Court takes judicial notice of criminal case number 11367 of this Court, in which the petitioner herein was tried and sentenced for the crime of attempt to commit rape. The opposition of the district attorney is overruled, and the Court is in a position to hear the evidence that petitioner wishes to offer in support of his motion as well as the evidence in opposition thereto."

The petitioner then introduced oral evidence consisting of the testimony of Harry Stolberg, Post Office Inspector, and documentary evidence consisting of an affidavit given by María Brunilda Soto before said inspector on December 29, 1949. The district attorney offered a medical certificate issued by Dr. José D. Montenegro on December 31, 1949. The case was submitted and the lower court rendered a lengthy decision on March 2, 1950, the dispositive part of which reads thus:

'FOR THE REASONS STATED, and this Court considering that the evidence in this case has shown beyond any doubt that Luis Gerena López, the defendant, was incarcerated by virtue of a judgment obtained by after-discovered fraud and which defendant could not discover prior to the trial notwithstanding his diligence, the Court, in furtherance of justice, orders to set aside and it hereby sets aside the verdict of the jury declaring the defendant guilty of the offense of attempt to commit rape on the person of María Brunilda Soto as well as the sentence imposed on him on December 23, 1949, decreeing its nullity and consequently ordering that defendant be discharged."

The district attorney moved for a reconsideration which was denied and pursuant to paragraph 5 of § 348 of the

Code of Criminal Procedure (1935 ed.) [1] he appealed and alleges that the lower court erred (1) in granting the petition for *Coram·Nobis*, inasmuch as said relief does not exist in Puerto Rico; (2) in deciding that the defendant could not avail himself of his right to a motion for new trial or of his right of appeal; and (3) in holding that the facts on which defendant based his motion—fraud—were discovered after judgment had been rendered and that notwithstanding his diligence, he could not have discovered them prior to the trial and sentence.

██ In his brief the district attorney has approached and argued this case exclusively on the theory that the remedy known in common law as "Writ of *Coram Nobis*" does not exist in Puerto Rico and that even in those jurisdictions where it is allowed, it would not lie under the concurring circumstances because appellee had a remedy at law, that is, he could have moved for a new trial or taken an appeal from the judgment.

The lower court did not decide that the writ of *Coram Nobis* existed in Puerto Rico. We have already seen how it decided the demurrer filed by the district attorney and, furthermore, in deciding the case on its merits it ratified its former decision by saying:

"We do not find it necessary to decide here whether or not the so-called writ of Coram Nobis, lies in this jurisdiction, for as we previously said, we have considered and construed defendant's petition as a motion to set aside the judgment which it is alleged was obtained by fraud, which fact, it is maintained, the defendant could not discover prior to the trial and to the sentence notwithstanding his diligence."

So that we are concerned solely with determining whether the lower court erred in deciding that, according

---

[1] Subdivision 5 of said Section provides:

"An appeal may be taken by The People:

"      .        .        .        .        .        .

"5. From an order made after judgment, affecting the substantial rights of the people."

to the specific facts alleged and proved in connection with appellee's petition, it was proper to set aside the judgment rendered against him in the case of attempt to commit rape. The California Court of Appeals treated a similar petition in like manner in *People* v. *Pérez*, 98 Pac. 870 (reconsideration denied by the Supreme Court) as follows:

"It is claimed by respondent that no such proceeding is known to our practice as an application for the writ of 'error coram nobis'; but we need not discuss this technical phase of the question, as we consider the proceeding here equivalent to a motion that the court set aside the judgment and permit the defendant to withdraw his plea of guilty upon the ground that it was extorted from him by fear of violence. That such a motion is proper we entertain no doubt. . . ."

It is a settled rule that the common-law remedy of "writ of *coram nobis*" is equally available by means of a motion to set aside a judgment obtained by fraud. *People* v. *Vernon*, 49 P. 2d 326 (D.C.A. Cal., 1935.)

▮▮▮ Even though in *People* v. *Méndez*, 67 P.R.R. 777, 781, we did not state the procedure to be followed, we did indicate that the district court was the appropriate place to determine if judgment has been obtained by after-discovered fraud inasmuch as it was a fraud on the District Court and cited *Hazel-Atlas* v. *Hartford Co.*, 322 U. S. 238. However, at the same time we warned as follows:

"We believe it appropriate to point out that even if the defendant is able to show that the evidence on which he bases the charge of fraud is newly-discovered,[2] his burden, if he attempts hereafter in the district court to attack this judgment as fraudulent, will be heavy. Mr. Justice Black points out in the opinion at pp. 245–6 that the *Hazel-Atlas* case 'is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed *possibly to have been guilty of perjury*. Here . . . we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals.' (Authorities.) . . ." (Italics ours.)

In footnote 2, which we have omitted here, we made reference to the evidence on which defendant in that case based his allegation of fraud and added: "Apart from the question as to how material this perjured testimony was to the issue here, the defendant would have to satisfy the district court that it could not have discovered this evidence by a reasonable diligence prior to trial. . . ."

We have therefore accepted, with certain limitations, the power of courts to set aside a judgment obtained by fraud and the question is boiled down to determining (1) if the fraud committed on the lower court, as appellee alleges, and by virtue of which a judgment of conviction was obtained against him, warrants said court to set aside the judgment and (2) whether appellee showed that he could not have discovered the evidence proving fraud by a reasonable diligence prior to trial. We shall now turn to the facts of the principal case and the evidence introduced in support of appellee's motion.

The lower court summarizes them as follows:

"Before going further, it is advisable to make a brief summary of the facts on which the defendant was convicted in this case. On December 12, 1949 a trial by jury was held in this Court in a prosecution filed by the People of Puerto Rico against Luis Gerena López, criminal case number 11,367, and of which we have taken judicial notice for an alleged offense of Assault to Commit Rape, consisting, in accordance to the information, in that said defendant, on or about June 25, 1949, and in Lares, unlawfully, willingly, and criminally attempted to have sexual intercourse by force and violence, without her consent, with María Brunilda Soto, who was not then and there his lawful wife and who made resistance thereby preventing defendant from carrying out his intention.

". . . . . . . .

"The evidence for the prosecution in said case consisted of the testimony of Dr. Ruperto Varela Canosa, who testified on the physical examination which he made on the alleged prosecutrix on June 27, 1949 and in which he treated several straight superficial slight wounds and apparent traumatic injuries in

the bladder; of the testimony of the alleged prosecutrix María Brunilda Soto who testified that between eight and nine o'clock P. M. on June 25, 1949 and in the town of Lares and near her home, the defendant, who had been her sweetheart while she was unmarried, grabbed her by the arms, covered her mouth, cut her and attempted to rape her; of the testimony of Agenor Fernández Torres, husband of the prosecutrix, who testified that when he reached his home, his wife fainted; that she told him that someone had attempted to rape her, that he pursued the alleged assailant but could not find him; and of an alleged letter written by the defendant several days after the occurrence, having no date, and in which the latter apparently admits the facts.

"The evidence for the defense consisted of the testimony of Miguel Vázquez Gueits, Police Lieutenant, of Lares who brought with him the police blotter which contained two entries with the investigation of the alleged offense; of defendant's testimony who emphatically denied the facts charged against him by the prosecutrix and who testified that on the night of the occurrence he visited a barrio of Lares together with Angel Quiles, a chauffeur, and later went to the movies in Lares, stating that he had been unable to locate this witness in order to bring him to court because he lived no longer in Lares at the time of the trial. The case was submitted to the jury after having been charged by the court."

We have already stated that the defendant was convicted by the jury and sentenced by the court.

The evidence offered in support of the motion that the judgment had been obtained by fraud consisted, as we have previously said, of the testimony of Mr. Harry Stolberg, Post Office inspector, given in the lower court, and the sworn statement of María Brunilda Soto given before said inspector on December 29, 1949 and of a certificate issued by Dr. José D. Montenegro on December 31, 1949.

In brief, Mr. Stolberg testified that about July, 1949 Agenor Fernández wrote to him and went to his office to tell him that his wife had received several obscene letters and of extortion; that he suspected a certain individual who had assaulted his wife to commit rape; that he went to Lares

on July 7 and at headquarters Fernández' wife, María Brunilda Soto, told him that the person who had sent the letters, was Gerena López, known as Guiche; that she swore that he must have sent them because he had attacked her twice and she had to be taken to the hospital; that on that day he took samples of the handwriting of Gerena López (he did not state how) and although not an expert in writing, it was clear to him, because of his experience, that the handwriting in those letters was not of Gerena López; that on that day she said something queer with respect to her husband Agenor to the effect that while she walked with her husband in the square, Gerena López without being seen by her husband called out flattering expressions to her and that she told the witness "my husband is a fool because he won't do a thing about it." That thereafter Stolberg continued the investigation because the handwriting in the letter seemed very peculiar to him and he asked one of the men in the post office to watch for anyone who purchased one-cent stamps which is the kind used for mailing letters within town and also to watch for anyone who mailed letters with that same handwriting; that shortly thereafter he received information that María Brunilda Soto Fernández had purchased a one-cent stamp the afternoon of the eleventh and on the next afternoon, the twelfth, she had entered the post office, —there was objection to the testimony because it was hearsay—and then he stated that as a result of the investigation he was convinced that she herself had mailed the letters. That he spoke to the federal district attorney and closed the case because according to the evidence the addressee herself was mailing the letters. That subsequently he learned that Gerena López had been sentenced and he received a complaint (he did not say from whom) to the effect that the letters which he had delivered at her house formed part of the evidence used to convict that boy. That he spoke to District Attorney Ponsa Feliú who offered to open the case and on December 29, 1949 he called María

Brunilda Soto to his office and told her of the evidence he had to the effect that she herself had mailed the letters in Lares; that she admitted it and gave a sworn statement; that she was calm and testified voluntarily without any force and quietly. The statement was admitted without objection of the district attorney [2] and reads thus:

"Affidavit.—Mary Soto de Fernández after being duly sworn declares: That I have been warned of my right to testify or to refuse to testify. I understand that any statement may be used against me. I voluntarily wish to say the following: That I have written several obscene letters addressed to myself in Lares. That I mailed them in the post office of Lares on June 15 or 16, June 18, June 22 and July 12. I made it appear that these letters were written by a former sweetheart called Guiche (Luis Gerena López) because he had done me great harm with my husband. I also accused him in the District Court of Aguadilla of an attempt to commit rape on my person alleging that he had scratched me and injured me on the night of June 25 in front of my home. I also wrote many other anonymous letters which I myself delivered at my home telling my husband that Guiche had sent them. I did all this in order to make my husband jealous and to take vengeance upon Guiche who had done me great harm. The truth is that Guiche, who is called Luis Gerena López, is innocent of any assault on my person. I scratched myself after having taken two or three beers.—I have read this statement and it is the truth and nothing but the truth. I ask forgiveness and I promise never to use the post office again to send such letters and I shall never again intend to incriminate any innocent person in matters of this kind.—(signed) María Brunilda Soto de Fernández.—Sworn to and subscribed before me on December 29, 1949, in the city of San Juan, P. R.—(signed) H. Stolberg, Post Office Inspector.—(signed) Miguel Feliciano Robles, P. I. No. 1523.—(signed) Miguel A. de Jesús, P.O. Clerk.—(signed) Alejandro Torres Orama."

On cross-examination Stolberg testified that María Brunilda Soto was charged with having mailed obscene letters

---

[2] This affidavit as well as the certificate of Dr. Montenegro which we copy under footnote 3 could possibly be considered as hearsay evidence, but, as we have said, they were admitted without any objection.

and letters of extortion in the post office of Lares addressed to herself. That the prosecution was abandoned because a medical certificate was introduced alleging that she was insane.[3] That he did not examine the letter which was introduced in evidence in the case against Gerena López but he did examine several letters that her husband showed him. The judge shows him the letter to which the district attorney refers and after comparing it with those he had, he repeatedly said that the handwriting was identical in all of them. The judge stated that he likewise "had noticed so."

As a result of the weighing of the evidence the lower court stated:

"From an examination and analysis of the evidence introduced by both parties in the present suit it appears beyond any doubt that the facts which served as the basis for the prosecution in this Court against Luis Gerena López are the result of a deliberately planned scheme executed by the alleged prosecutrix María Brunilda Soto, and the Court, after weighing the evidence, is fully convinced that those facts are false and fraudulent. This court is likewise convinced that notwithstanding his diligence, the defendant was unable to disclose any of such facts prior to trial or to the imposition of sentence for which reason he had no opportunity to raise it before this court.

"We are not concerned here with a mere conviction obtained by perjured testimony. We are concerned above all with the conviction obtained by means of a deliberate scheme and fraudulent plan executed by the alleged prosecutrix in which she deceived by perjury and fraud the police and judicial authorities and a physician of the city of Lares, as well as her own husband, and this court."

---

[3] This certificate introduced by the prosecuting attorney reads thus:
"Electromedical Room.—Dr. José D. Montenegro, 255 San Justo Street, San Juan, 25, P. R.—Dr. José D. Montenegro, Physician Surgeon, certifies that María Brunilda Soto is suffering of mental weakness together with hallucinations and impulsive tendencies. This disease may be cured by taking her away from the family for a rather long period of time.—At the request of the interested person I issue this certificate at San Juan on this 31st day of December of 1949.—José D. Montenegro, M. D., (signed) José D. Montenegro."

■■ The district attorney alleges that the court erred in determining that the appellee could not have disclosed these facts prior to trial and to the imposition of sentence against him. He grounds his contention on the brief examination to which María Brunilda Soto was submitted as witness of the defense, and in which she was asked whether she had ever been caught mailing an anonymous letter for the defendant, which she denied. The district attorney maintains that this question shows that the defendant was aware of the alleged fraudulent facts which had been investigated by the post office inspector and if he did not have direct knowledge of those facts he was negligent in not disclosing them. We do not agree. The question put to the alleged prosecutrix does not have, in our opinion, the scope intended by the district attorney, nor does it presuppose that he was aware of the investigation carried out by Mr. Stolberg. There is nothing in the testimony of this witness which tends to disclose such knowledge and we do not see how appellee can be charged with negligence for not knowing about the federal investigation. It was not until December 29, 1949, after appellee had been sentenced since December 23, that María Brunilda Soto gave a sworn statement admitting the fraud which she had committed. This fact, therefore, could not have served as a ground for a new trial on newly discovered evidence inasmuch as the motion must be filed prior to the imposition of sentence. Section 304 of the Code of Criminal Procedure. Neither could he have raised the question by appealing from the judgment because the facts which gave rise to defendant's petition did not transpire in any manner from the record in the case. Cf. People v. Méndez, supra, footnote 1, p. 781.

■ Did the action of María Brunilda Soto constitute fraud such as would warrant our holding that the lower court did not err in setting aside the judgment rendered against appellee? Such is in fact the question before us.

We have no doubt that the facts subsequently discovered showed that the testimony of María Brunilda Soto at the trial was perjured. That testimony however is not sufficient to set aside the judgment even though perjury is considered as a fraud on the court. *Hazel-Atlas* v. *Hartford Co. supra; People* v. *Méndez, supra,* and specially cases and authorities cited on page 834; Annotations in 33 A.L.R. 550 and 88 A.L.R. 1201. And this is so because litigation would become endless if it were allowed to pass on the credibility of the witnesses in a case by alleging subsequently, and even proving, that their testimony was false. Apart from the fact that to allow such a thing might lend itself to a fraud on the court by unscrupulous witnesses inasmuch as in many instances it could not be determined on which occasion they were saying the truth.

However, in the case at bar it was not the perjured testimony of María Brunilda Soto, taken separately, what induced the lower court to decide that judgment was obtained by fraud. There is also evidence that she deceived the judicial authorities by preparing anonymous letters as if they had been written by the appellee and which she addressed to herself and mailed, making it appear therein that the appellee was admitting the commission of the offense and threatening her, thereby causing said false evidence to serve as a basis for the prosecution against appellee. It was, indeed, a deliberately planned scheme executed for the purpose of taking vengeance upon the appellee and in order to accomplish this purpose she committed fraud on the lower court.

Under all the attendant circumstances in the present case and without it being understood that we undertake to establish a general rule that judgment should be set aside whenever a material witness admits perjury—*Cf. Davis* v. *State,* 161 N. E. 375, 382 (Ind. 1928)—we believe that the verdict of guilt would not have been rendered against appellee except for such scheme carefully planned and executed

by María Brunilda Soto. Consequently the lower court did not err in setting aside, in furtherance of justice, the judgment rendered against the appellee.

The order will be affirmed.